UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN SELBST and
JANET SELBST,

     Plaintiff,                            No.

v                                     Hon.

KEVIN CLAYTON, DO; DINO RECCHIA, MD;
MUNSON MEDICAL GROUP d/b/a Traverse
Heart and Vascular; and MUNSON HEALTHCARE,

     Defendants, Jointly and Severally.

_____

EMILY M. PEACOCK (P64410)
OLSMAN MACKENZIE PEACOCK &
WALLACE, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / (248) 591-2304 [fax]
epeacock@olsmanlaw.com

_____

*There is no other pending or resolved civil*
*action arising out of the same transaction*
*or occurrence as alleged in this Complaint.*

_____
*Emily M. Peacock, Esq.*

## COMPLAINT, JURY DEMAND AND
## AFFIDAVIT OF MERIT SIGNED BY MATTHEW BUDOFF, M.D.

NOW COME the Plaintiffs, ALAN SELBST and JANET SELBST,  by and through their

attorneys, OLSMAN MACKENZIE PEACOCK & WALLACE, P.C., and do hereby complain

against the Defendants, KEVIN CLAYTON, DO; DINO RECCHIA, MD; MUNSON MEDICAL

GROUP d/b/a Traverse Heart and Vascular; and MUNSON HEALTHCARE, in a civil action,

stating unto this Court as follows:

1.      Plaintiff Alan Selbst is a resident and citizen of the City of Sugarland, County of Fort Bend, State of Texas.

2.      Plaintiff Janet Selbst is a resident and citizen of the City of Sugarland, County of Fort Bend, State of Texas.

3.      Defendant Munson Medical Group d/b/a Traverse Heart and Vascular owns and/or operates a business which at all times relevant to this complaint was operating in the City of Traverse City, County of Grand Traverse, State of Michigan. Upon information and belief, at all times relevant to this complaint, Defendants, Kevin Clayton, DO and Dino Recchia, MD were agents and/or employees of Defendant, Munson Medical Group d/b/a Traverse Heart and Vascular.

4.      Defendant Munson Healthcare owns and/or operates a cardiology clinic which at all times relevant to this complaint was operating in the City of Traverse City, County of Grand Traverse, State of Michigan. Upon information and belief, at all times relevant to this complaint, Defendants, Kevin Clayton, DO and Dino Recchia, MD were agents and/or employees of Defendant, Munson Healthcare.

5.      Defendant Kevin Clayton, DO is a licensed physician who at all times relevant to this complaint was specializing and board certified in cardiology/cardiovascular disease and who at all times relevant to this complaint was providing services in the City of Traverse City, County of Grand Traverse, State of Michigan. Upon information and belief, at all times relevant to this complaint, Defendant Kevin Clayton, DO was an agent and/or employee of Defendants, Munson Medical Group d/b/a Traverse Heart and Vascular and Munson Healthcare.

6.      Defendant Dino Recchia, MD is a licensed physician who at all times relevant to this complaint was specializing and board certified in cardiology/cardiovascular disease and who at all times relevant to this complaint was providing services in the City of Traverse City, County

of Grand Traverse, State of Michigan. Upon information and belief, at all times relevant to this

complaint, Defendant Dino Recchia was an agent and/or employee of Defendants, Munson

Medical Group d/b/a Traverse Heart and Vascular and Munson Healthcare.

7.     The jurisdiction of this court is founded original jurisdiction pursuant to 28 USC

§1332 by reason of diversity of citizenship.

8.     The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

9.     Venue is premised upon the situs of the occurrence which is Grand Traverse

County.

10.    Alan Selbst is a retired endodontist from Texas.  He spends his summers in

Michigan.

11.    Prior to the events in question, he was active and in good health.

12.    On June 8, 2022, Dr. Selbst had an episode of light-headedness associated with a

heart rate of 143 as recorded by his Apple watch.

13.    The watch further identified the episode as atrial fibrillation.

14.    His wife, Janet Selbst, took him to the emergency department at Munson Medical

Center for evaluation.

15.    Dr. Selbst was evaluated by emergency medicine physician, Stephen Vanderroest,

MD.  Dr. Vanderroest's report provides:

> 79-year-old male presents here with neck discomfort that occurred today.  The
> triage note states chest pressure but is not chest pressure. The patient developed
> neck discomfort like a neck tightness in the central portion of his neck.  This was
> non-exertional.  The patient actually is extremely active and performs a regular
> athletic circuit for the last 6 months.  He states over the last 6 months has not had
> any change in his exercise tolerance.  He has never had exertional chest pain, neck
> pain, shortness of breath.  He has been able to maintain his same activity level.
> When the patient arrives here his symptoms improved. When I am examining the
> patient, the neck tightness has resolved.  The patient has an apple watch identified
> to him that he was in some form of tachycardia, which based upon the EKG is likely

3

atrial flutter.  His apple watch has now shown that he is no longer in that rhythm.
He has never had this before in the past.  He has no active complaints at this time.

16.     An electrocardiogram (EKG) was performed at 10:08 a.m., which was interpreted
as showing atrial flutter with heart rate of 89.

17.     At 12:56 p.m., an EKG showed a heart rate of 59, which the emergency physician
assessed as atrial flutter.

18.     Due to high volume in the emergency department and hospital, Dr. Vanderroest
discussed the case with cardiologist, Dr. Michael Howe, at Traverse Heart and Vascular.

19.     Dr. Howe, who was seeing Mrs. Selbst the next day, agreed to see Dr. Selbst as
well.  Dr Selbst was discharged on Eliquis.

20.     On June 9, 2022, Alan Selbst was seen by Dr. Howe, who referred him to Kevin
Clayton, D.O., also at Traverse Heart and Vascular.

21.     On June 22, 2022, Alan Selbst was seen by Dr. Clayton.

22.     Dr. Clayton noted the recent episode of atrial flutter and that Dr. Selbst had
occasional transient dizzy spells.

23.     Dr. Selbst informed Dr. Clayton that the light-headedness was rare and only
occurred when he got up too quickly.

24.     Dr. Selbst explained he has maintained a heart rate in the 50's-60's for
approximately 40 years.

25.     Dr. Selbst further reported being very active, working out at the gym regularly, with
no symptoms.

26.     Dr. Selbst informed Dr. Clayton that he thought the transient dizziness was related
to orthostatic hypotension.

27.     Dr. Clayton told Dr. Selbst, "Don't doctor the doctor."

28.     At the time of exam, Dr. Selbst's heart rate was 57 and blood pressure 128/72.

29.     Dr. Selbst reported he was started on Xarelto, instead of Eliquis, because his insurance covered it.

30.     Dr. Selbst further reported he took Xarelto for 3 days, then discontinued it due to bleeding from a skin tear on his head.

31.     Dr. Selbst also reported low-grade lymphoma and pancytopenia that was being followed by his physicians in Texas.

32.     A decision was made to continue with Aspirin 81 mg only.

33.     Dr. Clayton noted Dr. Selbst was probably not a good candidate for long-term anticoagulants given his thrombocytopenia and overall pancytopenia.

34.     Dr. Clayton noted that the transient dizziness may be related to bradycardia.

35.     Dr. Clayton noted it would be "difficult to control his fast heart rates when he otherwise has significant conduction disease and tends to be bradycardic."

36.     Dr. Clayton ordered a 48-hour Holter monitor.

37.     On June 29, 2022, Dr. Clayton called Dr. Selbst to report the Holter monitor results.

38.     Dr. Selbst was driving and had Dr. Clayton on speaker phone.

39.     Dr. Selbst's wife and two friends were present.

40.     Dr. Clayton told Dr. Selbst that the Holter monitor recorded his heart rate at 20 on two occasions while sleeping.

41.     Dr. Selbst informed Dr. Clayton that he had sleep apnea and used a CPAP at night.

42.     Dr. Clayton told Dr. Selbst that the low heart rate could be life threatening, and he recommended a pacemaker.

43.     When asked about returning to Houston for evaluation and treatment, Dr. Clayton told him not to fly or drive and have the pacemaker placed as soon as possible.

44.     In the Holter monitor report, Dr. Clayton noted Dr. Selbst had no symptoms during the monitoring period and no episodes of atrial flutter or atrial fibrillation.

45.     He further noted the underlying rhythm was sinus bradycardia with average heart rate of 65 and that a minimal heart rate occurred twice around 10:30 in the evening and once at around 1 a.m.

46.     Dr. Clayton also noted "functional heart rate at that time was 25 to 30 bmp."

47.     The Holter monitor summary, documents the minimum heart rate as 50 at 6:30 a.m. (day 1).

48.     Dr. Clayton told Dr. Selbst that he no longer performed cardiac procedures, and he recommended Dr. Dino Recchia, also from Traverse Heart and Vascular, perform the surgery.

49.     On July 6, 2022, Dr. Selbst presented to Munson Medical Center for the pacemaker implantation.

50.     He briefly met Dr. Recchia, who showed him the pacemaker and explained where it would be implanted.

51.     A formal consult was not documented by Dr. Recchia.

52.     According to Dr Recchia's operative report, the indications for the pacemaker were sick sinus syndrome with symptomatic bradycardia, paroxysmal atrial fibrillation and flutter, pancytopenia.

53.     According to the operative report, the left subclavian vein was used to place a dual chamber pacemaker.

54.     After the ventricle and atrial leads were screwed into place, Dr. Selbst became hypotensive and diaphoretic.

55.     An echocardiogram was performed, and it showed a large pericardial effusion.

56.     An emergency pericardiocentesis was performed with placement of a pericardial drain.

57.     500 ml of blood was drained from the pericardium but it re-accumulated.

58.     A new drain was placed in a different position, with an additional 500 ml of blood removed.

59.     Dr. Recchia requested the assistance of John Coatney, M.D., of Traverse Heart and Vascular, who scrubbed in, and removed the pacemaker leads.

60.     Dr. Selbst became unstable again, with re-accumulation of blood around the heart.

61.     The pericardial drain was placed in a new position and another 500 ml of blood was removed.

62.     According to the operative report "at that time echocardiogram showed the fluid was drained and did not appear to be reaccumulating but given the patient's instability cardiac surgery consultation was obtained.  Dr. Lall came to the catheterization lab and, after discussing the situation, recommended emergency cardiac surgery to assess for location of perforation and appropriate repair."

63.     Dr. Selbst was taken emergently to the operating room.

64.     Dr. Selbst overheard orders to type and cross blood and felt his chest being prepped for the sternal saw.

65.     Dr. Lall performed the emergent sternotomy.

66.     The pericardium was opened and there was 250 ml of dark fresh clot, which was evacuated.

67.     The heart and surrounding vasculature were explored.

68.     No active bleeding was found, and the site of the perforation could not be identified.

69.     Temporary epicardial ventricular pacing wires and two chest tubes were placed.

70.     Dr. Selbst was sent to the intensive care unit.

71.     Dr. Selbst's children flew to Michigan to be with their father.

72.     Dr. Clayton never came to the hospital, and he failed to provide complete and accurate information to Dr. Coatney, who had recommended and scheduled a second surgery to place a pacemaker.

73.     After consulting with physicians in Texas, Dr. Selbst and his family requested transfer to the DeBakey Heart Center at Houston Methodist Hospital, and they cancelled the planned pacemaker procedure.

74.     On July 12, 2022, Dr. Selbst was transferred via air ambulance.

75.     He was admitted to the cardiac intensive care unit at the DeBakey Heart Center. Electrophysiologist, Dr. Joe Fahed, was consulted.

76.     Dr. Fahed evaluated Dr. Selbst and noted there was no urgent need for pacemaker as Dr. Selbst was in normal sinus rhythm with a heart rate of 60-70 bpm since arrival and he was asymptomatic.

77.     Dr. Fahed recommended a loop recorder implant to allow for a longer monitoring period and further assessment of the atrial fibrillation burden and the reported bradycardia.

78.     Also, Dr. Fahed requested the Holter monitor tracings to review.

79.     On July 14, 20222, a loop recorder was placed.

80.     On July 15, 2022, Dr. Selbst was discharged.

81.     The events left Dr. Selbst bedridden for weeks and incapacitated for months.

82.     Following discharge, Dr. Selbst was under the care of Dr. Fahed and interventional cardiologist, Dr. Michael Raizner.

83.     After review of the Holter monitor results, Dr. Fahed informed Dr. Selbst that there were no indications for pacemaker implantation.

84.     Dr. Selbst's atrial fibrillation has been successfully treated with medication alone, and he has not experienced any episodes of bradycardia.

85.     Dr. Selbst has on-going physical and mental harm related to the unnecessary surgery and life-threatening complications, including but not limited to, decreased strength and stamina, impacting activities of daily living and resulting in loss of the natural enjoyments of life, cognitive impairment resulting in loss of earnings\loss of earnings capacity, scarring, nightmares, anxiety, distrust, and depression.

86.     Dr. Selbst's wife, Janet, has also been affected by her husband's ordeal.

## COUNT I
## MUNSON MEDICAL GROUP d/b/a Traverse Heart and Vascular;
## MUNSON HEALTHCARE; and KEVIN CLAYTON, DO

87.     Plaintiffs incorporate by reference, as though fully stated herein, all of the allegations contained in the other paragraphs of this Complaint.

88.     The Defendants Munson Medical Group d/b/a Traverse Heart and Vascular and/or Munson Healthcare are legally responsible for the professional negligence and/or medical malpractice of their employees, agents, and/or ostensible agents, including, but not limited to, Kevin Clayton, DO, under the doctrines of vicarious liability, *respondeat superior* and/or *Grewe v. Mt. Clemens General Hospital*, 404 Mich 240, 273 NW2d 429 (1978).

89.     The Defendants Munson Medical Group d/b/a Traverse Heart and Vascular and/or Munson Healthcare, by and through their employees, agents, and/or ostensible agents, including but not limited to, Kevin Clayton, DO, owed a duty to Dr. Alan Selbst to provide care in conformance with that of a physician specializing and board certified in cardiology.

90.     The Defendants Munson Medical Group d/b/a Traverse Heart and Vascular and/or Munson Healthcare, by and through their employees, agents, and/or ostensible agents, including but not limited to, Kevin Clayton, DO, further owed a duty to Dr. Alan Selbst to exercise due care and caution.

91.     It was then and there the duty of Kevin Clayton, DO to provide care in conformance with that of a physician specializing and board certified in cardiology.

92.     Kevin Clayton, DO breached the aforesaid duties when he performed the following acts of professional negligence, medical malpractice, and/or ordinary negligence:

      a.     Negligently and recklessly failing to timely and appropriately evaluate, diagnose, and treat Dr. Alan Selbst.

      b.     Negligently and recklessly failing to timely and appropriately interpret the Holter monitor results.

      c.     Negligently and recklessly failing to timely and appropriately provide complete and accurate information to Dr. Alan Selbst regarding his medical condition and his Holter monitor results.

      d.     Negligently and recklessly failing to timely and appropriately assess the indications for a cardiac pacemaker and recognize that Dr. Selbst did not meet diagnostic criteria for pacemaker implantation as non-sustained, nocturnal, asymptomatic bradycardia is not an appropriate basis for pacemaker implantation.

      e.     Negligently and recklessly failing to timely and appropriately follow any applicable rules, regulation and/or patient care guidelines for pacemaker implantation.

      f.     Negligently and recklessly failing to timely and appropriately inform Dr. Selbst that a pacemaker was not indicated and of the attendant risks.

g.      Negligently and recklessly failing to timely and appropriately inform Dr. Selbst of treatment options, including medical management.

h.      Negligently and recklessly failing to timely and appropriately provide complete and accurate information to Dino Recchia, M.D. and John Coatney, M.D., regarding Dr. Alan Selbst's cardiac condition, including the lack of indications for pacemaker placement.

i.      Negligently and recklessly failing to timely and appropriately provide and/or coordinate the provision of appropriate post-operative care.

j.      Negligently and recklessly failing to timely and appropriately perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

93.     As a further direct and proximate result of the professional negligence, medical malpractice and/or ordinary negligence, of the employees, agents, and/or ostensible agents of Defendants Munson Medical Group d/b/a Traverse Heart and Vascular and/or Munson Healthcare, including but not limited to, Kevin Clayton, DO, Dr. Alan Selbst sustained serious and permanent injuries, including but not limited to:

a.      Unnecessary pacemaker implantation;

b.      Perforation of heart, tamponade, pericardiocentesis, emergency open-heart surgery, extended hospitalization, prolonged recovery, decreased strength and stamina, and cognitive impairment;

c.      Extensive monitoring and aggressive procedures and treatment including but not limited to surgical repair, IV fluids, IV antibiotics, blood transfusions and analgesics;

d.      Extreme physical pain and suffering;

e.      Mental anguish, including nightmares, anxiety, distrust and depression;

f.      Fright and shock;

g.      Denial of social pleasure and enjoyments;

h.      Embarrassment, humiliation and mortification;

i.      Disfigurement of chest;

j.     Reasonable expense for travel, out-of-pocket medical bills, and medical equipment which has been required as a result of the injury;

k.     Loss of services;

l.     Loss of income;

m.     Loss of earning capacity;

n.     Other injuries and damages to be determined through the further course of discovery.

94.     As a further direct and proximate result of the professional negligence, medical malpractice and/or ordinary negligence of Defendants, Janet Selbst, as the spouse of Alan Selbst, has also sustained serious and permanent injuries, including but not limited to, out of pocket medical expenses, a loss of the love, comfort, household services, society, and consortium of her husband, which he was accustomed to give and would have given but for the injuries he sustained as a result of the negligence, professional negligence, or malpractice of the Defendants.

WHEREFORE, Plaintiffs pray for damages in whatever amount above Seventy-Five Thousand ($75,000) Dollars to which they are found to be entitled at the time of trial, together with interest, costs and attorney fees; wherefore, they bring this suit.

**COUNT II**
**MUNSON MEDICAL GROUP d/b/a Traverse Heart and Vascular;**
**MUNSON HEALTHCARE; and DINO RECCHIA, MD**

95.     Plaintiffs incorporate by reference, as though fully stated herein, all of the allegations contained in the other paragraphs of this complaint.

96.     The Defendants Munson Medical Group d/b/a Traverse Heart and Vascular and/or Munson Healthcare are legally responsible for the professional negligence and/or medical malpractice of their employees, agents, and/or ostensible agents, including, but not limited to, Dino Recchia, MD, under the doctrines of vicarious liability, *respondeat superior* and/or *Grewe v. Mt. Clemens General Hospital*, 404 Mich 240, 273 NW2d 429 (1978).

97.     The Defendants Munson Medical Group d/b/a Traverse Heart and Vascular and/or Munson Healthcare, by and through their employees, agents, and/or ostensible agents, including but not limited to, Dino Recchia, MD, owed a duty to Dr. Alan Selbst to provide care in conformance with that of a physician specializing and board certified in cardiology.

98.     The Defendants Medical Group d/b/a Traverse Heart and Vascular and/or Munson Healthcare, by and through their employees, agents, and/or ostensible agents, including but not limited to, Dino Recchia, MD, further owed a duty to Dr. Alan Selbst to exercise due care and caution.

99.     It was then and there the duty of Dino Recchia, MD to provide care in conformance with that of a physician specializing and board certified in cardiology.

100.    Dino Recchia, MD breached the aforesaid duties when he performed the following acts of professional negligence, medical malpractice and/or ordinary negligence:

   a.    Negligently and recklessly failing to timely and appropriately evaluate, diagnose, and treat Alan Selbst.

   b.    Negligently and recklessly failing to timely and appropriately review Dr. Selbst's medical records, including the Holter monitor results.

   c.    Negligently and recklessly failing to timely and appropriately provide complete and accurate information to Dr. Alan Selbst regarding his medical condition and his Holter monitor results.

   d.    Negligently and recklessly failing to timely, appropriately, and independently assess the indications for a cardiac pacemaker and recognize that Dr. Selbst did not meet diagnostic criteria for pacemaker implantation as non-sustained, nocturnal, asymptomatic bradycardia is not an appropriate basis for pacemaker implantation.

   e.    Negligently and recklessly failing to timely and appropriately follow any applicable rules, regulation and/or patient care guidelines for pacemaker implantation.

   f.    Negligently and recklessly failing to timely and appropriately inform Dr. Selbst that a pacemaker was not indicated and of the attendant risks.

g.     Negligently and recklessly failing to timely and appropriately inform Dr. Selbst of treatment options, including medical management.

h.     Negligently and recklessly failing to timely and appropriately communicate with other medical providers regarding Dr. Alan Selbst's cardiac condition, including the lack of indications for pacemaker placement.

i.     Negligently and recklessly failing to timely and appropriately perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

101.     As a further direct and proximate result of the professional negligence, medical malpractice and/or ordinary negligence of the employees, agents, and/or ostensible agents of Defendants Munson Medical Group d/b/a Traverse Heart and Vascular and/or Munson Healthcare, including but not limited to, Dino Recchia, MD, Dr. Alan Selbst sustained serious and permanent injuries, including but not limited to:

a.     Unnecessary pacemaker implantation;

b.     Perforation of heart, tamponade, pericardiocentesis, emergency open-heart surgery, extended hospitalization, prolonged recovery, decreased strength and stamina, and cognitive impairment;

c.     Extensive monitoring and aggressive procedures and treatment including but not limited to surgical repair, IV fluids, IV antibiotics, blood transfusions and analgesics;

d.     Extreme physical pain and suffering;

e.     Mental anguish, including nightmares, anxiety, distrust, and depression;

f.     Fright and shock;

g.     Denial of social pleasure and enjoyments;

h.     Embarrassment, humiliation and mortification;

i.     Disfigurement of chest;

j.     Reasonable expense for travel, out-of-pocket medical bills, and medical equipment which has been required as a result of the injury;

k.     Loss of services;

      l.      Loss of income;

      m.     Loss of earning capacity;

      n.     Other injuries and damages to be determined through the further course of discovery.

102.    As a further direct and proximate result of the professional negligence, medical malpractice and/or ordinary negligence of Defendants, Janet Selbst, as the spouse of Alan Selbst, has also sustained serious and permanent injuries, including but not limited to, out of pocket medical expenses, a loss of the love, comfort, household services, society, and consortium of her husband, which he was accustomed to give and would have given but for the injuries he sustained as a result of the negligence, professional negligence, or malpractice of the Defendants.

WHEREFORE, Plaintiffs pray for damages in whatever amount above Seventy-Five Thousand ($75,000) Dollars to which they are found to be entitled at the time of trial, together with interest, costs and attorney fees; wherefore, they bring this suit.

OLSMAN MacKENZIE PEACOCK & WALLACE, P.C.

EMILY M. PEACOCK (P64410)
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / (248) 591-2304 [fax]
epeacock@olsmanlaw.com

Dated: June 11, 2024

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN SELBST and
JANET SELBST,

     Plaintiff,                                      No.

v                                                Hon.

KEVIN CLAYTON, DO; DINO RECCHIA, MD;
MUNSON MEDICAL GROUP d/b/a Traverse
Heart and Vascular; and MUNSON HEALTHCARE,

     Defendants, Jointly and Severally.

_____

EMILY M. PEACOCK (P64410)
OLSMAN MACKENZIE PEACOCK &
WALLACE, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / (248) 591-2304 [fax]
epeacock@olsmanlaw.com

_____

## JURY DEMAND

     NOW COME the Plaintiffs, ALAN SELBST and JANET SELBST, by and through their attorneys, OLSMAN MACKENZIE PEACOCK & WALLACE, P.C., and hereby demand a Trial by Jury in the above entitled matter.

                                    OLSMAN MacKENZIE PEACOCK &
                                    WALLACE, P.C.

                                    _____
                                    EMILY M. PEACOCK (P64410)
                                    Attorneys for Plaintiff
                                    2684 West Eleven Mile Road
                                    Berkley, MI 48072
                                    248-591-2300 / (248) 591-2304 [fax]
                                    epeacock@olsmanlaw.com

Dated:  June 11, 2024

## AFFIDAVIT OF MERIT
## OF MATTHEW BUDOFF, M.D.

STATE OF CALIFORNIA    )

                              )ss.

COUNTY OF LOS ANGELES)

       I certify that I have reviewed the Notice of Intent to File a Claim pursuant to MCLA 600.2912(b), MSA 27A.2912(2), and all medical records supplied to me by Plaintiff's attorneys regarding Dr. Alan Selbst concerning the allegations contained in the Notice. I further certify that I am board certified in Cardiovascular Disease, and during the year immediately preceding the date of the occurrence that is the basis for this claim, I devoted a majority of my professional time to the active clinical practice of Cardiovascular Disease/Cardiology and/or the instruction of students in an accredited health professional school or clinical research program in Cardiovascular Disease/Cardiology. I also state the following:

### A. The Applicable Standard of Practice or Care

       The standard of care applicable to the physicians at MUNSON MEDICAL GROUP d/b/a TRAVERSE HEART AND VASCULAR, who were involved in the care and treatment of Alan Selbst, including but not limited to KEVIN CLAYTON, D.O., is that of a physician specializing and board certified in Cardiology/Cardiovascular Disease. At a minimum, the applicable standard of practice or care required KEVIN CLAYTON, D.O., and any other involved Cardiologist to:

1. Timely and appropriately evaluate, diagnose, and treat Dr. Alan Selbst.

2. Timely and appropriately interpret the Holter monitor results.

3. Timely and appropriately provide complete and accurate information to Dr. Alan Selbst regarding his medical condition and his Holter monitor results.

4. Timely and appropriately assess the indications for a cardiac pacemaker and recognize that Dr. Selbst did not meet diagnostic criteria for pacemaker implantation as non-sustained, nocturnal, asymptomatic bradycardia is not an appropriate basis for pacemaker implantation.

5. Timely and appropriately follow any applicable rules, regulation and/or patient care guidelines for pacemaker implantation.

6. Timely and appropriately inform Dr. Selbst that a pacemaker was not indicated and of the attendant risks.

7.  Timely and appropriately inform Dr. Selbst of treatment options, including medical management.

8.  Timely and appropriately provide complete and accurate information to Dino Recchia, M.D. and John Coatney, M.D., regarding Dr. Alan Selbst's cardiac condition, including the lack of indications for pacemaker placement.

9.  Timely and appropriately provide and/or coordinate the provision of appropriate post-operative care.

10. Timely and appropriately perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

The standard of care applicable to the physicians at MUNSON MEDICAL GROUP d/b/a TRAVERSE HEART AND VASCULAR, who were involved in the care and treatment of Alan Selbst, including but not limited to DINO RECCHIA, M.D., is that of a physician specializing and board certified in Cardiology/Cardiovascular Disease.  At a minimum, the applicable standard of practice or care required DINO RECCHIA, M.D., and any other involved Cardiologist to:

1.  Timely and appropriately evaluate, diagnose, and treat Alan Selbst.

2.  Timely and appropriately review Dr. Selbst's medical records, including the Holter monitor results.

3.  Timely and appropriately provide complete and accurate information to Dr. Alan Selbst regarding his medical condition and his Holter monitor results.

4.  Timely, appropriately, and independently assess the indications for a cardiac pacemaker and recognize that Dr. Selbst did not meet diagnostic criteria for pacemaker implantation as non-sustained, nocturnal, asymptomatic bradycardia is not an appropriate basis for pacemaker implantation.

5.  Timely and appropriately follow any applicable rules, regulation and/or patient care guidelines for pacemaker implantation.

6.  Timely and appropriately inform Dr. Selbst that a pacemaker was not indicated and of the attendant risks.

7.  Timely and appropriately inform Dr. Selbst of treatment options, including medical management.

8.  Timely and appropriately communicate with other medical providers regarding Dr. Alan Selbst's cardiac condition, including the lack of indications for pacemaker placement.

9.  Timely and appropriately perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

2

**B.  The Applicable Standard of Practice or Care Was Breached**

KEVIN CLAYTON, D.O., breached the applicable standard of practice or care when he failed to:

1.  Timely and appropriately evaluate, diagnose, and treat Dr. Alan Selbst.

2.  Timely and appropriately interpret the Holter monitor results.

3.  Timely and appropriately provide complete and accurate information to Dr. Alan Selbst regarding his medical condition and his Holter monitor results.

4.  Timely and appropriately assess the indications for a cardiac pacemaker and recognize that Dr. Selbst did not meet diagnostic criteria for pacemaker implantation as non-sustained, nocturnal, asymptomatic bradycardia is not an appropriate basis for pacemaker implantation.

5.  Timely and appropriately follow any applicable rules, regulation and/or patient care guidelines for pacemaker implantation.

6.  Timely and appropriately inform Dr. Selbst that a pacemaker was not indicated and of the attendant risks.

7.  Timely and appropriately inform Dr. Selbst of treatment options, including medical management.

8.  Timely and appropriately provide complete and accurate information to Dino Recchia, M.D. and John Coatney, M.D., regarding Dr. Alan Selbst's cardiac condition, including the lack of indications for pacemaker placement.

9.  Timely and appropriately provide and/or coordinate the provision of appropriate post-operative care.

10. Timely and appropriately perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.


DINO RECCHIA, M.D., breached the applicable standard of practice or care when he failed to:

1.  Timely and appropriately evaluate, diagnose, and treat Alan Selbst.

2.  Timely and appropriately review Dr. Selbst's medical records, including the Holter monitor results.

3.  Timely and appropriately provide complete and accurate information to Dr. Alan Selbst regarding his medical condition and his Holter monitor results.

3

4.  Timely, appropriately, and independently assess the indications for a cardiac pacemaker and recognize that Dr. Selbst did not meet diagnostic criteria for pacemaker implantation as non-sustained, nocturnal, asymptomatic bradycardia is not an appropriate basis for pacemaker implantation.

5.  Timely and appropriately follow any applicable rules, regulation and/or patient care guidelines for pacemaker implantation.

6.  Timely and appropriately inform Dr. Selbst that a pacemaker was not indicated and of the attendant risks.

7.  Timely and appropriately inform Dr. Selbst of treatment options, including medical management.

8.  Timely and appropriately communicate with other medical providers regarding Dr. Alan Selbst's cardiac condition, including the lack of indications for pacemaker placement.

9.  Timely and appropriately perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

C.    **The Actions that Should Have Been Taken or Omitted in Order to have Complied With the Applicable Standard of Practice or Care**

At a minimum, to achieve compliance with the applicable standard of practice or care, KEVIN CLAYTON, D.O., should have:

1.  Timely and appropriately evaluated, diagnosed, and treated Dr. Alan Selbst.

2.  Timely and appropriately interpreted the Holter monitor results.

3.  Timely and appropriately provided complete and accurate information to Dr. Alan Selbst regarding his medical condition and his Holter monitor results.

4.  Timely and appropriately assessed the indications for a cardiac pacemaker and recognized that Dr. Selbst did not meet diagnostic criteria for pacemaker implantation as non-sustained, nocturnal, asymptomatic bradycardia is not an appropriate basis for pacemaker implantation.

5.  Timely and appropriately followed any applicable rules, regulation and/or patient care guidelines for pacemaker implantation.

6.  Timely and appropriately informed Dr. Selbst that a pacemaker was not indicated and of the attendant risks.

7.  Timely and appropriately informed Dr. Selbst of treatment options, including medical management.

8. Timely and appropriately provided complete and accurate information to Dino Recchia, M.D. and John Coatney, M.D., regarding Dr. Alan Selbst's cardiac condition, including the lack of indications for pacemaker placement.

9. Timely and appropriately provided and/or coordinated the provision of appropriate post-operative care.

10. Timely and appropriately performed other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

At a minimum, to achieve compliance with the applicable standard of practice or care, DINO RECCHIA, M.D., should have:

1. Timely and appropriately evaluated, diagnosed, and treated Alan Selbst.

2. Timely and appropriately reviewed Dr. Selbst's medical records, including the Holter monitor results.

3. Timely and appropriately provided complete and accurate information to Dr. Alan Selbst regarding his medical condition and his Holter monitor results.

4. Timely, appropriately, and independently assessed the indications for a cardiac pacemaker and recognized that Dr. Selbst did not meet diagnostic criteria for pacemaker implantation as non-sustained, nocturnal, asymptomatic bradycardia is not an appropriate basis for pacemaker implantation.

5. Timely and appropriately followed any applicable rules, regulation and/or patient care guidelines for pacemaker implantation.

6. Timely and appropriately informed Dr. Selbst that a pacemaker was not indicated and of the attendant risks.

7. Timely and appropriately informed Dr. Selbst of treatment options, including medical management.

8. Timely and appropriately communicated with other medical providers regarding Dr. Alan Selbst's cardiac condition, including the lack of indications for pacemaker placement.

9. Timely and appropriately performed other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

**D.** **The Manner in Which the Breach of the Standard of Practice or Care was a Proximate Cause of the Injury Alleged**

As the direct and proximate result of the deviations from the standard of care set forth above, Dr. Alan Selbst underwent an unnecessary pacemaker implantation resulting in perforation of his heart, tamponade, pericardiocentesis, emergency open-heart surgery, extended hospitalization, a prolonged recovery, and the sequelae thereof.

If the standard of care had been complied with, as set forth above, it is more likely than not, that Alan Selbst would not have undergone pacemaker implantation and that he would have avoided the cardiac perforation and complications which followed.


_____
MATTHEW BUDOFF, M.D.

Subscribed and sworn to before me
this _____ day of _____ 2023


_____ see attached _____
Notary Public
County of_____
State of _____
My commission expires_____

6

## CALIFORNIA JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this

20TH day of November , 20 22 , by
Date        Month        Year

(1) Matthew Sudoff ,
         Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) ⑥

(and)

(2) _____
         Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.

Signature _____
         Signature of Notary Public

MICHAEL OHANNESIAN
Notary Public - California
Los Angeles County
Commission # 2322822
My Comm. Expires Mar 28, 2024

Place Notary Seal Above

-------------------------------------------------------------------------

**Further description of Any Attached Document**

Title or Type of Document: Affidavit of Merit of Matthew Sudoff, M.O.,

Document Date: _____ Number of Pages G

Signer(s) Other Than Named Above: _____